IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| VINCENT F. ZEPLIN, JR. | * | Chapter 13 |
|     Debtor | * | |
| | * | Case No.: 1-05-bk-01582 |
| MARY ZEPLIN, | * | |
|     Objectant | * | |
| | * | |
|     v. | * | |
| | * | |
| VINCENT F. ZEPLIN, | * | |
|     Respondent | * | |
| | * | |

## OPINION

### Facts and Procedural History

Before the Court is the objection of Mary Zeplin ("Objectant") to the amended chapter 13 plan of Vincent F. Zeplin, Jr. ("Debtor").[1] Objectant is Debtor's mother, who holds an unsecured claim in this case in the amount of $210,728.87. The claim is based on certain loans that Objectant made to Debtor and his business, Harrisburg Optical Company, Inc. Debtor's bankruptcy petition and chapter 13 plan were filed on March 17, 2005. An amended plan was filed on September 22, 2005. Objectant filed an objection to confirmation of the amended plan on January 19, 2006. In her Objection she alleged that Debtor had failed to commit to the plan non-exempt estate property – namely, the proceeds of an unliquidated, pre-petition medical malpractice lawsuit (the "Lawsuit"). On a pre-petition date undisclosed in the record, Debtor and his non-debtor spouse, Karen Zeplin ("Ms. Zeplin"), filed the Lawsuit in state court against

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(J).

1

Pinnacle Health Hospitals and others. Debtor's petition was filed before the entry of judgment in the personal injury suit.[2]

On or about September 23, 2004, Debtor and Ms. Zeplin assigned to Commerce Bank/Harrisburg, N.A. ("Commerce") "a security interest in all rights of [Debtor and Ms. Zeplin] to receive any proceeds" from the Lawsuit (the "Assignment"). The Assignment provided that the Zeplins would continue to have "complete control over the handling and management of the lawsuit," including all decisions related to settlement. In conjunction with this agreement (but in a separate document), Commerce agreed to loan Debtor $50,000.00. In his schedules, Debtor listed Commerce as the holder of five (5) claims totaling $195,058.00 secured by a "Guarantee, Assignment of Law Suit Proceeds." A sixth claim, in the amount of $266,796.65 was listed as being secured by "Guarantee, Assignment" and by a third mortgage on Debtor's residence.

In his amended plan, Debtor submits to the supervision and control of the trustee the sum of $50.00 per month for a period of sixty (60) months, plus "such portion of the proceeds of [the Lawsuit] which is non-exempt and not secured." Objectant argues that Commerce's purported security interest in the proceeds of the Lawsuit is invalid, so any non-exempt amounts recovered must be committed to the plan. A hearing was held on the Objection on February 22, 2006. On March 31, 2006, the parties filed briefs in the matter, which is now ripe for decision.

## Discussion

In order to be confirmed, a chapter 13 plan must meet the requirements of 11 U.S.C. § 1325(a) and, if an objection is filed by the trustee or an unsecured claimant, the requirements of

---

[2] The status of the Lawsuit was not addressed at the hearing.

11 U.S.C. § 1325(b). The contents of a chapter 13 plan are specified in 11 U.S.C. § 1322. Section 1325(a)(4) – the "best interest of the creditors test" – mandates that a chapter 13 plan provide for payment of each allowed unsecured claim in an amount not less than what the creditor would be paid if the case were liquidated under chapter 7. Therefore, unsecured creditors must be paid through the plan at least as much as they would receive in a chapter 7 proceeding.

In the instant case, Objectant asserts that the Assignment is not valid under state law. Therefore, while Commerce's claim may be secured by other collateral, it is not secured by the proceeds of the Lawsuit. Debtor's chapter 13 plan, however, assumes that the debt to Commerce is secured by proceeds of the Lawsuit and proposes to pay a portion of the proceeds to Commerce in satisfaction of its lien. Objectant has opposed Debtor's recognition of Commerce's security interest in the potential proceeds of the medical malpractice action by objecting to confirmation. However, the Bankruptcy Rules specify that the validity of a lien is determined through the commencement of an adversary proceeding, not through an objection to a plan. *See* Fed R. Bankr. P. 7001.[3] Although addressing the validity of Commerce's lien in the context of

---

[3]The Assignment states that Debtor "hereby assigns, pledges and grants to [Commerce] a *security interest* in all rights of [Debtor and Ms. Zeplin] to receive any proceeds" of the Lawsuit. Thus, the Assignment does not effect an outright *transfer* of right and title to the Lawsuit. However, an equitable interest in the proceeds is created in favor of Commerce by Debtor's commitment to "irrevocably" instruct his counsel to notify Commerce within two business days of any settlement and "to hold that amount of funds up to the amount owed to [Commerce] for the sole and exclusive benefit of [Commerce] and to turn over to [Commerce] within three (3) business days of receipt of any funds from the settlement . . . that amount of funds equal to the amount owed to [Commerce] . . . ." *See Hurley v. Ashbridge*, 55 Pa. Super. 523 (1913).

3

plan confirmation is awkward, since neither Debtor nor Commerce objected to this procedure, I will address the argument on the merits.[4]

    *a. General non-assignability of tort claims.*

The parties' briefs assert different doctrines and holdings from Pennsylvania case law to argue their relative positions regarding whether the Assignment was valid. Objectant asserts that the Assignment is not valid because of well-settled Pennsylvania law that prohibits the assignment of unliquidated personal injury lawsuits. *See Patten v. Wilson*, 34 Pa. 299 (1859); *Sensenig v. Pennsylvania Railroad Co.*, 229 Pa. 168, 78 A. 91 (1910); *accord Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357 (1988). In *Patten,* the Pennsylvania Supreme Court in *dicta* observed that a claim for unliquidated damages in an action "sounding in tort" is "not capable of assignment before verdict." *Patten*, 34 Pa. at 301. This rule originates in common law, which provides that tort claims, unlike contract claims, do not survive the death of the plaintiff-assignor.[5] *See Gurski v. Rosenblum,* 48 Conn. Supp. 226, 234, 838 A.2d 1090, 1095 (2003); *Hernandez v. Suburban Hospital Asso.*, 319 Md. 226, 233, 572 A.2d 144, 147 (1990). "A right of action strictly personal is not assignable and the general doctrine is, both in law and in equity, that a right of action for a pure tort is not the subject of assignment:2 Am. & Eng. Enc. of Law, 1020." *Sensenig*, 229 Pa. at 172, 78 A. at 95. Although personal injury actions no

---

    [4]The failure of a party to commence an adversary proceeding to determine the validity of a lien on a debtor's property is not a jurisdictional defect and may be waived by the parties. *In re Enfolinc, Inc*., 233 B.R. 351, 354 (Bankr. E. D. Va. 1999); *In re Robinson*, 217 B.R. 527, 530 (Bankr. E.D. Tex. 1998) (citations omitted).

    [5]Pennsylvania law now provides that all causes of action, real or personal, survive the death of the plaintiff or the defendant. 42 Pa. C.S.A. § 8302. *Myers v. Estate of Wilks*, 440 Pa. Superior Ct. 176, 655 A.2d 176 (1995).

longer are regarded as purely personal, courts have continued to limit the assignment of these actions on public policy grounds to avoid disfavored arrangements involving champerty and maintenance. *Karp v. Speitzer*, 132 Ariz, 599, 647 P.2d 1197 (1982); *City of Richmond v. Hanes*, 203 Va. 102, 122 S.E. 2d 895 (1961); *Hernandez, supra*.

      *b. Champtery and Maintenance*

Champerty and maintenance is an "officious intermeddling in a lawsuit by a non-party by maintaining, supporting or assisting either party, with money or otherwise, to prosecute or defend the litigation." *In re Rite Aid Corp. Securities Litigation*, 146 F.Supp.2d 706, 716 (E.D. Pa. 2001) (italics in the original) (citation omitted). "Under Pennsylvania law, if an assignment is champertous, it is invalid. An assignment is champertous when the party involved: (1) has no legitimate interest in the suit, but for the agreement; (2) expends his own money in prosecuting the suit; and (3) is entitled by the bargain to a share in the proceeds of the suit." *Silver v. Klehr, Harrison, Harvey, Branzburg & Ellers, LLP,* 2004 WL 1699269, *3 (E.D.Pa.) (citing *Belfonte v. Miller,* 212 Pa.Super. 508, 243 A.2d 150, 152 (1968)). *See also Hedlund, supra*. "[A]ll three elements must be present for finding of champerty." *Silver,* at *4. The purpose of the prohibition against champerty is to prevent third parties from initiating, funding and controlling lawsuits filed purely for commercial purposes and not for purposes of redressing injury. *Fleetwood Area School Dist. v. Berks County Bd. of Assessment Appeals* 821 A.2d 1268, 1273 (Pa. Commonwealth Ct. 2003) ("the activity of champerty has long been considered repugnant to public policy against profiteering and speculating in litigation . . . .")

Commerce argues that the instant Assignment is not champertous because the potential *proceeds* of the Lawsuit were assigned, not the *Lawsuit* itself. This argument is borne out by the

5

plain language of the Assignment in which Debtor "assigns, pledges and grants" to Commerce a security interest in "all right of [Debtor] to receive any *proceeds*" from the cause of action. The Assignment does not obligate Commerce to fund the expenses of the suit, and there is no evidence that Commerce participated in or influenced the course of the litigation whatsoever. Eleven paragraphs of the sixteen-paragraph Assignment address "Control of the Lawsuit." In pertinent part, this section states that "[a]t all times [Debtor] shall have total and complete control over the handling and management of the lawsuit. . . including but not limited to, any and all decisions concerning settlement, amount to settle for, whether or not to litigate and/or the manner by which the litigation will be conducted." The Assignment further states that Commerce "shall have no direct or indirect involvement in the handling and management of the lawsuit" and that Commerce cannot "seek to influence" Debtor in the handling and management of the suit. The Assignment explicitly absolves Debtor of any "duty to report to [Commerce] the progress of the lawsuit" and it deprives Commerce of any "right to request any information concerning the progress of the lawsuit." It is evident from these provisions that Commerce may not expend its own money in prosecuting the suit and is barred from controlling or even attempting to influence Debtor regarding the litigation. Therefore, I conclude that the Assignment does not possess the three elements normally present in agreements found to be champertous.

  c. *Assignment of Lawsuit proceeds*

 No Pennsylvania case has addressed the assignment of the proceeds of a personal injury lawsuit as distinguished from the action itself. However, since *Patten* there has been some erosion of the strict prohibition against the assignment of what most courts regard as personal

6

torts. In *Hedlund*, the Pennsylvania Supreme Court ruled that a cause of action for attorney malpractice "does not involve personal injury in that it arises out of negligence and breach of contract, and the injury alleged concerns purely pecuniary interests." Finding attorney malpractice actions more similar to an infringement on property rights, the Court determined that public policy concerns did not bar the assignment of this discrete class of torts.[6] *Hedlund*, 517 Pa. at 525-26, 539 A.2d at 358-59.

Unlike the attorney malpractice suit in *Hedlund,* the Lawsuit at issue in the case at bar is firmly within the category of personal injury actions. Therefore, I am bound by the clear rulings of the highest Pennsylvania court, which has determined that personal injury causes of action may not be assigned. If Debtor had assigned the Lawsuit to Commerce, this transfer clearly would be invalid. The question remains as to whether the assignment of the proceeds should lead to a different result.

---

[6] In the *Hedlund* decision, the Pennsylvania Supreme Court cited countervailing public policy concerns stating that "[w]e will not allow the concept of the attorney-client relationship to be used as a shield by an attorney to protect him or her from the consequences of legal malpractice." *Id.* 517 Pa. at 526, 539 A.2d at 359. This policy argument has been questioned by a number of courts who have declined to follow it. "Refusing to allow assignment of legal malpractice claims would not shield an attorney from the consequences of legal malpractice. The client would still be able to bring any and all legal malpractice claims against his or her attorney." *See Wagener v. McDonald,* 509 N.W.2d 188, 192 (Minn. App. 1993); *Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves,* 709 F. Supp. 44 (D. Conn. 1989). "Those courts which have directly addressed the reasoning of the *Hedlund* majority have generally found it to be unpersuasive." *Alcman Services Corp. v. Samuel H. Bullock, P.C.*, 925 F.Supp. 252, 260 fn. 5 (D. N.J. 1996) (citing *Wagener,* 509 N.W.2d at 188; *Continental Cas. Co. v. Pullman, Comley, Bradley and Reeves,* 709 F.Supp. 44 (D.Conn.1989); *Scarlett v. Barnes,* 121 B.R. 578 (W.D.Mo.1990); *Roberts v. Holland & Hart,* 857 P.2d 492 (Colo.App.1993); *Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313 (Tex. App. 1994)). Justice Flaherty, in his strong dissenting opinion in *Hedlund,* observed that the decision eroded the longstanding rule prohibiting assignment of personal injury actions and that "important policy considerations weigh against permitting the transfer of malpractice claims." 517 Pa. at 527.

Commerce argues that the general prohibition against assignment of personal injury lawsuits should not apply to the assignment of the lawsuit proceeds. It concedes, however, that it has found no Pennsylvania cases on point. The Court also has been unsuccessful in locating Pennsylvania cases that address this precise issue. In the absence of binding precedent, I am compelled to predict the ruling of the Pennsylvania Supreme Court on the validity of assigning the proceeds of a personal injury suit. *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 224 (3rd Cir. 2005) (without an opinion from state's highest court, federal court must predict how that court would rule.) To make this determination, I will review cases from states that adhere to the common law principle denying the assignment of personal injury suits prior to judgment, but which permit the assignment of the proceeds of these suits.

Commerce cites several courts from other states that have adopted the common law prohibition against the assignment of tort claims, but have permitted the assignment of the unliquidated proceeds of such claims. *See Achrem v. Expressway Plaza Limited Partnership*, 112 Nev. 737, 917 P.2d 447 (1996). As in *Hedlund*, in which the Pennsylvania Supreme Court determined that countervailing public policy concerns tipped the balance in favor of permitting the assignment of legal malpractice claims, the cases often have turned on competing public policy concerns. In *In re Musser*, 24 B.R. 913 (W.D. Va. 1982), the district court sustained an assignment of the proceeds of a personal injury suit to the hospital that treated the plaintiff. The court observed that "debtors retained complete control over their personal injury cases. . . . The hospitals had no right to proceed against the third-party tort-feasors even if the debtors decided not to pursue their tort claims. *Id.* at 921-22. The court also analogized the assignment at issue in the case to an attorney's contingent fee agreement and observed that each involved only the

8

funds recovered and not the substance of the cause of action. The court stated that it had "difficulty understanding why equitable assignments of personal injury proceeds should be declared unenforceable." *Id. See also Gurski,* 48 Conn. Supp. at 247, 838 A.2d at 1102 (assignment of proceeds of legal malpractice action); *Charlotte-Mecklenburg Hosp. Auth. v. First of Ga. Ins. Co.,* 340 N.C. 88, 455 S.E.2d 655, 657 (1995), *rehearing denied,* 340 N.C. 364, 458 S.E.2d 186 (1995) (assignment of proceeds of personal injury action to hospital); *Berkowitz v. Haigood,* 256 N.J. Super. 342, 346, 606 A.2d 1157, 1159 (1992) (assignment of proceeds of personal injury action to chiropractor); *Hernandez*, 319 Md. at 237, 572 A.2d at 147 (assignment of proceeds of personal injury action to hospital); *Kuhns v. Standard Oil Co. Of Cal*., 257 Or. 482, 478 P.2d 396, 405 (1971) (assignment of disability payments by employee to employer); *In re Mucelli*, 21 B.R. 601 (Bankr. S.D.N.Y. 1982) ("The legal distinction between the assignment of a cause of action for personal injury and the assignment of its proceeds has been consistently followed in New York.").[7]

Other courts have found this approach, which permits the assignment of the proceeds, but not the underlying cause of action, to be "a distinction without a difference" and have continued to bar the assignment of tort suit proceeds. *See Karp,* 132 Ariz. at 602, 647 P.2d at 1200; *Town & Country Bank v. Country Mutual Ins. Co.*, 121 Ill. App. 3d 216, 459 N.E.2d 639 (1984);

---

[7]Commerce relies extensively on the holding of the Nevada Supreme Court in *Achrem, supra*. In the opinion the court provides a comprehensive historical review of public policy considerations regarding the assignment of tort actions and their proceeds. The decision in *Achrem* is less persuasive in deciding how the Pennsylvania Supreme Court would rule than opinions of the Maryland, New Jersey and Connecticut courts, however, because Nevada, unlike Pennsylvania, permits the assignment of personal injury actions. *See* 1979 Nev. Stat., ch. 305, § 2 at 458-59 (statutory prohibition on assignment of tort claims deleted from Nev. Rev. Stat. § 41.100(3)) *cited in Lingel v. Olbin*, 198 Ariz. 249, 256, 8 P.3d 1163, 1169 (2000).

9

*Gilmore v. Attebery*, 899 S.W.2d 164 (Mo. App. 1995); *Southern Farm Bureau Cas. Ins. Co. v. Wright Oil Co.*, 248 Ark. 803, 454 S.W.2d 69 (1970).

Under Connecticut law, a legal malpractice claim like any other personal injury action, may not be assigned. *Gurski*, 48 Conn. Supp. at 234, 838 A.2d at 1095. However, the assignment of the proceeds of a personal injury action is valid. *Id.* at 247 *citing Kennedy v. Collins Law Firm*, Superior Court, judicial district of Hartford, Docket No. CV-98-0581592S, 24 Conn. L. Rptr. 268 (March 5, 1999). The Connecticut Superior Court concluded that the assignment of proceeds could be distinguished from the assignment of the underlying cause of action because in the former scenario the plaintiff, not the assignee, controls the litigation. *Id.* New Jersey law is similar. "As a matter of public policy, a claim for damages in tort for personal injuries is not assignable before judgment. . . . However, the proceeds from such a claim may be assigned." *Berkowitz*, 606 A.2d at 1159 (citations omitted). In *Berkowitz*, the court noted that judgments are assignable by statute. The court concluded, therefore, that potential proceeds from the settlement of a claim for personal injuries also must be assignable. The New Jersey court found that public policy considerations barring the assignment of the tort claim itself were inapplicable when considering the assignment of the proceeds of the claim. *Id.* In *Hernandez*, *supra*, the Maryland Court of Appeals noted the split of opinions among the courts as to whether the proceeds of a personal injury action may be assigned and determined that it "saw no danger of champerty or maintenance, nor any other public policy reason to preclude the assignment of expected personal injury claim benefits. . . ." *Id.* at 235, 572 A.2d at 148. Further, the Maryland court found public policy considerations supported the assignment because patients were able to obtain care at a time when they were not in a position to pay for it.

## Conclusion

After considering decisions rendered in jurisdictions which, like Pennsylvania, prohibit the assignment of personal injury claims prior to judgment, I conclude that the Pennsylvania Supreme Court would uphold the assignment of the proceeds of these types of actions. I do not agree with the courts that have ruled that the assignment of the proceeds is a distinction without a difference. There is a significant difference. The very evils that the prohibition on the assignment of tort claims seeks to avoid – champerty and maintenance – are not present when the proceeds are assigned, if the assignment also prohibits the assignee from controlling or participating in the litigation. In the within case, Commerce not only was prohibited from participating or influencing the litigation, the bank was barred from even requesting information about the status of the suit. Further, assignment of the proceeds was not intended to divest Debtor of his interest in the proceeds. The proceeds are property of the estate subject to the security interest created by the Assignment in favor of Commerce. Therefore, I find that the Assignment is not invalid under Pennsylvania law and does not run afoul of public policy considerations. An order will be entering overruling the Objection.

> BY THE COURT,
>
> *Mary D. France*
> Bankruptcy Judge

Date: October 25, 2006

*This document is electronically signed and filed on the same date.*